NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

WILLOW MAINTENANCE CORP.,
Respondent.

No. 422, Docket 28658.

United States Court of Appeals
Second Circuit.

Argued May 13, 1964.

Decided May 13, 1964.

Seymour Strongin, Atty., National Labor Relations Board, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Lee M. Modjeska, Atty., Washington, D. C., on the brief), for petitioner.

Stephen A. Cohen, New York City (Henry G. Friedlander and W. Harvey Mayer, New York City, of counsel), for respondent.

Before KAUFMAN, HAYS and MARSHALL, Circuit Judges.

### PER CURIAM.

The Board here seeks enforcement of an order which, *inter alia*, directs respondent Willow Maintenance, a taxicab company, to reinstate and make whole one Jose Torres, a driver discharged because he distributed union literature in the company's waiting room. Earlier this term, in N. L. R. B. v. United Aircraft Corp., 324 F.2d 128 (2d Cir. 1963), we held that enforcement of a company rule which prohibited the distribution of union literature in non-work areas on non-work time was an unfair labor practice, in the absence of special circumstances necessitating such a rule for the maintenance of production or discipline. The major question raised in this proceeding was whether the waiting room was, in fact, a non-work area.

Both the Labor Board and its Trial Examiner determined that it was, and we agree. Although 80 of the room's 300 square feet are occupied by the company's dispatcher and cashier, testimony before the Trial Examiner revealed that the remainder of the room is lined with lockers, contains an L-shaped bench, and is open to drivers as a lounging place when they are waiting to be dispatched. The drivers are permitted to read newspapers, watch television and converse freely. In the words of the company's dispatcher, "they discuss everything. Sometimes they discuss about horses, they will discuss about fights. Among the cab drivers, we are the best philosophers, we discuss all conversations." And, most significantly, at the very moment that Torres was distributing his union cards, "the television set was on, * * * some men were reading, * * * others were conversing [and] the room was far from crowded."

Under these circumstances, we find that the Board was entirely correct in concluding that the waiting-room was a "non-work" area. In Judge Clark's words, "[w]e have long passed the point where the bundle of property rights can be used arbitrarily or capriciously to restrict a worker's freedom of association or expression." NLRB v. United Aircraft Corp., 324 F.2d at 131. Especially in light of the proviso to the Board's order, which emphasizes that nothing contained therein "shall require Respondents to permit activity in the waiting room which disrupts the operation of the business," we find that the company's legitimate interests have been well protected, and we accordingly enforce those portions of the order which pertain to the distribution of union literature and Torres' discharge.

In addition, however, the Board found that the company had violated § 8 (a) (1) in briefly interrogating Torres about union activity at a time prior to the incident in the waiting-room, and accordingly ordered the company to cease and desist from any such interrogation in the future. Since we do not believe that the questioning at issue was either explicitly or implicitly coercive, we hold that this violation was not established, and we hence modify the order by deleting that portion which refers to the interrogation. See NLRB v. Montgomery Ward & Co., 192 F.2d 160 (2d Cir. 1951).

The order is modified accordingly, and, as so modified, is enforced in open court.